UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

*In re Ex Parte* Application of Sumitomo Pharma UK Holdings, Ltd. for an Order, Pursuant to 28 U.S.C. § 1782, Granting It Leave to Obtain Discovery for Use in Foreign Proceedings

Case No. _____

---

# MEMORANDUM OF LAW IN SUPPORT OF SUMITOMO PHARMA UK HOLDINGS, LTD.'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

David Livshiz
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
david.livshiz@freshfields.com

*Attorney for Applicant Sumitomo Pharma UK Holdings, Ltd.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1
FACTUAL BACKGROUND....................................................................................................3
    I.    The Parties...................................................................................................................3
    II.    Sumitomo Takes Myovant Private. ............................................................................3
    III.    Alpine Buys Shares and Sues. ....................................................................................4
    IV.    The Bermuda Proceedings...........................................................................................5
    V.    The Limited Discovery Sought. ..................................................................................6
ARGUMENT .................................................................................................................................7
    I.    Sumitomo's Application Satisfies the Requirements of Section 1782............................7
    II.    Sumitomo's Application Satisfies the Statutory Requirements of Section 1782. ...........9
        A.    Respondent Is Located in the Southern District of New York....................................9
        B.    The Requested Discovery Is For Use in Legal Proceedings Ongoing in the Bermuda Supreme Court. ........................................................................................9
        C.    Petitioner is a Party to the Foreign Proceeding. .......................................................10
    III.    The Intel Discretionary Factors Strongly Favor Granting the Requested Discovery....10
        A.    Respondent Is Not a Participant in the Bermuda Proceedings, and the Bermuda Court Cannot Compel Discovery in the United States. ............................................11
        B.    The Bermuda Court Is Not Hostile to This Application. .........................................12
        C.    The Application Has Not Been Filed to Circumvent Any Law or Rule. ..................13
        D.    The Discovery Requests Are Not Unduly Intrusive or Burdensome. ........................13
CONCLUSION............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

In re Accent Delight Intl. Ltd.,
　　869 F.3d 121 (2d Cir. 2017)..................................................................................................10

Ahmad Hamad Algosaibi & Bros. v. Standard Chartered Intl (USA) Ltd.,
　　785 F.Supp. 2d 434 (S.D.N.Y. 2011)....................................................................................10

Allied Aviation, LLC v. ASIG Holdings Corp.,
　　2012 WL 13137013 (M.D. Fla. May 1, 2012)......................................................................11

In Re Alpine Partners (BVI) L.P.,
　　No. 23-mc-00173 (S.D.N.Y. May 23, 2023) ........................................................................12

In Re Alpine Partners (BVI) L.P.,
　　No. 24-mc-00011 (S.D.N.Y. January 8, 2024) .....................................................................12

Appl. Of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS
　　Forwarding (USA), Inc.,
　　747 F.3d 1262 (11th Cir. 2014)...............................................................................................7

In re Appl. Of Malev Hungarian Airlines,
　　964 F.2d 97 (2d Cir. 1992)......................................................................................................8

In re Application of Hill,
　　2005 WL 1330769 (S.D.N.Y. June 3, 2005) ........................................................................12

Brandi-Dohrn v. IKB Deutsche Industriebank AG,
　　673 F.3d 76 (2d Cir. 2012)..................................................................................................7, 9

In re Dominique Levy,
　　249 F.R.D. 96 (S.D.N.Y. 2008) ............................................................................................11

In re Edelman,
　　295 F.3d 171 (2d Cir. 2002)....................................................................................................7

Eni Ghana Expl. & Prod. v. Gaffney Cline & Assocs.,
　　2022 WL 3156224 (S.D. Tex. Aug. 8, 2022) .......................................................................11

Euromepa, S.A. v. R. Esmerian, Inc.,
　　51 F.3d 1095 (2d Cir. 1995)..................................................................................................12

Gushlak v. Gushlak,
　　486 F. App'x 215 (2d Cir. 2012) ............................................................................................1

Intel Corp. v. Advanced Micro Devices, Inc.,
　　542 U.S. 241 (2004)......................................................................................................*passim*

John Deere Ltd. v. Sperry Corp.,
　　754 F.2d 132 (3d Cir. 1985)....................................................................................................8

| **Cases** | **Page(s)** |
|---|---|
| In re Kuwait Ports Auth., <br> 2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) | 12 |
| In re Letter Rogatory from Justice Ct., Dist. Of Montreal, Can., <br> 523 F.2d 562 (6th Cir. 1975) | 7 |
| In re Letters Rogatory From Local Ct., <br> 29 F. Supp. 2d 776 (E.D. Mich. 1998) | 8 |
| Mees v. Buiter, <br> 793 F.3d 291 (2d Cir. 2015) | 10 |
| In re Ex Parte Motorola Mobility. LLC., <br> 2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) | 13 |
| In re Oasis Core Investments Fund Ltd., <br> 2024 WL 472984 (S.D.N.Y. Feb. 7, 2024) | 12, 13 |
| In re Porsche Automobil Holding SE, <br> 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) | 8 |
| In the Matter of the Application of Winston Wen-Young for Assistance Before a Foreign Tribunal, <br> No. 21-cv-8627, ECF No. 19 (D.N.J. June 15, 2021) | 13 |

**Statutes**

| | |
|---|---|
| 28 U.S.C. § 1782 | *passim* |

Petitioner Sumitomo Pharma UK Holdings, Ltd. (f.k.a. Sumitovant Biopharma Ltd.) ("Sumitomo" or "Petitioner") respectfully submits this memorandum of law in support of its *ex parte*[1] application (the "Application") made pursuant to 28 U.S.C. § 1782 seeking limited discovery from Clear Street, LLC ("Clear Street" or "Respondent") for use in proceedings pending before the Bermuda Supreme Court (the "Bermuda Proceedings" and the "Bermuda Court").

## PRELIMINARY STATEMENT

The Bermuda Proceedings stem from Sumitomo's 2023 take-private merger (the "Transaction") with Bermuda-based Myovant Sciences Ltd. ("Myovant"). The Transaction won the support of over 93% of voting minority shareholders, in addition to the support of Sumitomo, who was the majority shareholder. After the Transaction was announced, but before it could close, Alpine Partners (BVI) L.P. ("Alpine"), a hedge fund that invests in companies in order to sue them, acquired millions of Myovant shares. Per its *modus operandi*, Alpine then commenced litigation in Bermuda to extract additional value from Sumitomo.

But in its rush to buy Myovant shares and start litigating, Alpine may have made a mistake: a party has standing to bring an appraisal action under Bermuda law *only* if it is a registered shareholder of the company on the record date, if it was entitled to vote its shares, and if its shares were not voted in favor of the merger. Here, it appears Alpine bought most of its shares on margin, meaning that Alpine was likely not entitled to vote its shares, which may instead have been voted *in favor* of the Transaction by a third party. There is therefore a very real chance that Alpine does not have standing to litigate the Bermuda Proceeding and must instead content itself with the over 50% premium Sumitomo paid the rest of Myovant's

---

[1] The Second Circuit has recognized that Section 1782 applications are often filed and granted *ex parte* because the entities from whom discovery is sought "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." <u>Gushlak v. Gushlak</u>, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").

minority shareholders.

Recognizing the salience and significance of this issue, and its potential to be dispositive, the Bermuda Court ordered Alpine to produce all documents related to the ownership and voting of the shares for which it claims appraisal rights. Alpine, however, has failed to produce these documents in Bermuda and has informed the Bermuda Court that "underlying documents relating to the Plaintiffs' trades . . . are likely to be held by nominees, brokers, and other third parties." Declaration of John Wasty filed concurrently herewith ("Wasty Declaration") Ex. B ("Plaintiffs' Skeleton Argument") ¶ 136.

Sumitomo brings the Application to fill this gap and establish whether Alpine has standing in the Bermuda Proceeding by seeking a limited set of documents concerning Alpine's acquisition of Myovant shares from Respondent, who served as Alpine's broker-dealer, and a corporate deposition on the same topic. The requested documents should be straightforward to collect, are highly relevant to the claims brought in the Bermuda Proceedings, and are exactly the kind of modest discovery Section 1782 was enacted to provide litigants in foreign proceedings.

Sumitomo satisfies each statutory requirement for Section 1782 discovery. As a party to the Bermuda Proceedings, Sumitomo is clearly an interested person; Respondent is located in this District; and the requested discovery is for use in the Bermuda Proceedings.

Each of the four discretionary, equitable factors the Supreme Court set out in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004), also weighs in favor of granting the Application. *First*, Respondent is not a party to the Bermuda Proceedings, and is located in the United States, beyond the jurisdictional reach of the Bermuda court. *Second*, Bermudian law does not prohibit parties from seeking Section 1782 discovery, and Bermudian courts are in fact receptive to foreign-sourced evidence. *Third*, the Application does not circumvent any Bermudian law or rule. *Fourth*, Sumitomo's requested discovery will

not impose an undue burden on Respondent. It consists solely of a narrow set of document requests related to Alpine's holding of Myovant shares, the power to vote those shares, and how they were voted with respect to the Transaction, and a corporate deposition covering the same topics.

For these reasons and as set forth below, Sumitomo respectfully requests that the Court exercise its discretion to grant the Application.

## FACTUAL BACKGROUND

### I. The Parties

Sumitomo, the Petitioner in this matter, is a company engaged in the development and commercialization of novel medical solutions, including medicines designed to treat cancer.

Respondent Clear Street is a corporation organized and existing under the laws of the state of Delaware, with its headquarters and principal places of business in Manhattan. Clear Street's headquarters and principal place of business is 4 World Trade Center, 150 Greenwich Street, 45th Floor, New York, NY, 10007.

### II. Sumitomo Takes Myovant Private.

In December 2019, Sumitomo acquired a majority stake in Myovant, a publicly traded company incorporated in Bermuda. Wasty Decl. ¶ 6; Declaration of Brandt Henslee filed concurrently herewith ("Henslee Declaration"), Ex. 1 ("Proxy Statement") at 23.

On September 30, 2022, Sumitomo offered to purchase the remaining shares of Myovant at a price of $22.75 per share. Wasty Decl. ¶ 9; Proxy Statement at 28. At the time, Myovant's shares were trading below $18 per share, Proxy Statement at 51, so Sumitomo's offer included a nearly 30% premium. The Special Committee nonetheless rejected this offer as unfair to Myovant's minority shareholders. Wasty Decl. ¶ 9; Proxy Statement at 28–29. Over the next few weeks, Sumitomo made a series of increasing offers, each of which was

rejected by the Special Committee. Wasty Decl. ¶ 9; Proxy Statement at 29–32.

Finally, on October 23, 2022, Sumitomo increased its offer to $27 per share, a 50.3% premium to the market price immediately before Sumitomo announced it was exploring a potential transaction (the "Undisturbed Price"). Wasty Decl. ¶ 10; Proxy Statement at 32. The Special Committee accepted Sumitomo's offer and approved the Transaction. Wasty Decl. ¶ 11; Proxy Statement at 33.

On March 1, 2023, Myovant's shareholders voted overwhelmingly in favor of the Transaction. Wasty Decl. ¶ 13; Henslee Decl. Ex. 2 ("Myovant Form 8-K"). More than 97% of the voting shareholders approved the transaction, including a large majority of Myovant's minority shareholders: Excluding shares held by Sumitomo or its affiliates, over 93.3% of the votes cast by Myovant's common shares voted in favor of the Transaction. Wasty Decl. ¶ 13; Myovant Form 8-K. The merger was consummated on March 10, 2023. Wasty Decl. ¶ 14.

### III. Alpine Buys Shares and Sues.

Alpine is a hedge fund that attempts to make money through "event driven" trading. Henslee Decl. Ex. 3 (Alpine Press Release). As part of that strategy, Alpine invests in companies with the intention of suing them.

Prior to October 2022—when the Transaction was announced—Alpine was not a material shareholder of Myovant. Henslee Decl. Ex. 4 ("Alpine 2022-09-30 13-F Filing") (listing no holdings in Myovant Sciences Ltd.). After learning of the Transaction, Alpine evidently decided it could use the acquisition to extract value from Sumitomo. Alpine knew Myovant shares were trading at $18.00 per share prior to Sumitomo expressing interest in a transaction. Alpine also knew that the transaction price of $27 per share represented a more than 50% premium to Myovant's Undisturbed Price. But Alpine wanted more, so, between December 2022 and February 2023, Alpine ostensibly acquired 6,246,084 shares of Myovant.

Compare Henslee Decl. Ex. 5 ("2023-02-17 13-G Filing"); with id. Ex. 6 ("Alpine 2022-12-31 13-F Filing") at 20.  Alpine acquired these shares by engaging the services of the Respondent as broker-dealer.  Wasty Decl. ¶ 12.

Alpine then waited until the deal was about to close and sued.  The strategy was simple:  Alpine knew that in Bermuda, unlike in Delaware, a shareholder seeking appraisal is guaranteed to receive at least the transaction price, Wasty Decl. ¶¶ 16–17, meaning that litigation has no material downside.  Moreover, in Bermuda, plaintiffs may initiate and litigate appraisal proceedings without advancing any rationale or theory as to why they did not receive fair value for their shares.  Wasty Decl. ¶ 17.

## IV. The Bermuda Proceedings

On February 27, 2023, Alpine and another shareholder with a similar business model, APS Holding Corporation, (the "Bermuda Plaintiffs") initiated the Bermuda Proceedings, seeking an appraisal of their shares in Myovant and additional return on their investment.  Wasty Decl. Ex. A ("Originating Summons").

After briefing and a hearing in the Bermuda Proceedings, the Bermuda Court ordered Alpine to produce, *inter alia*, "[a]ll Documents relating to the ownership of and voting instructions given in relation to, the 8,425,084 shares in respect of which the Plaintiffs claim appraisal rights."  Wasty Decl. Ex. C ("Directions Order") ¶ 6.2.  These documents were and are relevant to Alpine's standing to pursue its claim in the Bermuda Proceeding and to the amount of any damages awarded.  Wasty Decl. Ex. D ("Directions Order Judgment") ¶ 38 (ordering production of documents in response to contention that "[they] may be relevant to the Plaintiffs' standing in relation to these section 106 proceedings.").

Notwithstanding the Bermuda Court's Order, Alpine failed to produce two key groups of responsive documents.  *First*, Alpine's production did not include documents sufficient to establish whether it had the right to vote all the shares it claims to own, or whether

and how its shares were in fact voted. Sumitomo asked Alpine to provide copies of documents related to "any further voting instructions . . . issued by Alpine for the 6,425,084 shares it seeks the appraisal of" or confirm that no further instructions were issued. Wasty Decl. ¶ 23. In response, counsel for Alpine confirmed that all responsive documents in its possession had already been produced. Wasty Decl. ¶ 23. Earlier, Alpine took the position that these documents were most "likely to be held by nominees, brokers and other third parties." Plaintiffs' Skeleton Argument ¶ 136.

*Second*, Alpine did not produce documents showing whether its shares of Myovant were acquired on margin or were otherwise subject to rehypothecation, which would mean that the shares were acquired without the corresponding voting rights, and that Alpine could not have voted against the Transaction.[2] These documents are directly relevant to Alpine's standing to bring an appraisal action in Bermuda under Section 106(6) of the Bermuda Companies Act 1981, which requires that a party seeking appraisal be a "shareholder who did not vote in favour of the amalgamation or merger." Wasty Decl. ¶ 21; id. Ex. E ("Bermuda Companies Act") § 106(6). On February 29, 2024, counsel for Sumitomo contacted counsel for Alpine regarding this deficiency and requested that Alpine provide responsive documents, but Alpine declined to produce them. Wasty Decl. ¶ 24. Respondent, as Alpine's broker, will have internal documents concerning the status of shares owned by Alpine that will directly bear on the question of whether Alpine has standing to pursue its appraisal litigation in Bermuda.

## V. The Limited Discovery Sought.

In this Application, Sumitomo seeks a few narrow categories of documents from Respondent for use in the Bermuda Proceedings. As set forth in more detail in the proposed

---

[2] Rehypothecation is a practice whereby banks and brokers use, for their own purposes, assets that have been posted as collateral by their clients. In a typical example of rehypothecation, securities that have been posted with a prime brokerage as collateral by a hedge fund are used by the brokerage to back its own transactions and trades.

subpoenas, see Henslee Decl. Exs. 9, 10, Sumitomo seeks: (i) documents identifying the accounts in which Alpine's shares of Myovant were held and any agreements relevant to those accounts; (ii) communication with Alpine concerning Alpine's shares of Myovant; (iii) internal communications concerning Alpine's shares of Myovant and whether they were acquired on margin or were otherwise ineligible to be voted; (iv) documents showing which of Alpine's shares of Myovant were acquired on margin or subject to rehypothecation; and (v) documents relating to voting instructions issued by Alpine or third parties to Respondent or confirming votes cast by Alpine or third parties for Alpine's Myovant shares (the "Requested Discovery"). Petitioner also seeks a deposition of a corporate representative on these topics. This narrowly-tailored discovery is directly relevant to Alpine's standing to pursue the Bermuda Proceedings and to the amount of any damages award.

## ARGUMENT

**I.    Sumitomo's Application Satisfies the Requirements of Section 1782.**

Section 1782 allows a "broad range of discovery" to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." Intel, 542 U.S. 241, 259, 262 (2004). Congress enacted Section 1782 "to provide . . . efficacious discovery for use in foreign and international proceedings" and to make discovery "of evidence for use in foreign litigation simple and fair." In re Edelman, 295 F.3d 171, 173 (2d Cir. 2002).

Since it was first enacted in 1855, Congress has on several occasions revised the statute – each time expanding the scope of discovery permitted by Section 1782. See Intel, 542 U.S. at 247–48; Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given increasingly broad applicability."); Appl. Of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1269 (11th Cir. 2014) (commenting that the evolution of Section 1782 demonstrates a Congressional desire to "broaden[] the scope of assistance" and to allow district

courts to more readily grant discovery); In re Letter Rogatory from Justice Ct., Dist. Of Montreal, Can., 523 F.2d 562, 565 (6th Cir. 1975) ("These changes have made the statute increasingly less restrictive"); In re Letters Rogatory From Local Ct., 29 F. Supp. 2d 776, 779 (E.D. Mich. 1998) ("The intent of Congress in enacting [Section] 1782 was to 'strengthen the power of the district courts to respond to requests for international assistance.'").

District courts exercise their discretion under Section 1782 to effectuate the twin aims of the statute: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." Intel, 542 U.S. at 252. Thus, Section 1782 has been broadly interpreted to permit U.S. courts to grant "wide assistance" to foreign litigants. See In re Appl. Of Malev Hungarian Airlines, 964 F.2d 97, 100–101 (2d Cir. 1992) ("imposing an additional burden" on Section 1782 applicants would "undermine the policy of improving procedures for assistance to foreign and international tribunals"); see also, e.g., In re Letters Rogatory From Local Ct., 29 F. Supp. 2d at 779 (intent of Congress in enacting Section 1782 was to "strengthen the power of the district courts to respond to requests for international assistance") (internal quotations and citations omitted); John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 135 (3d Cir. 1985) (Section 1782's "liberal intent to provide judicial assistance" has been "acknowledged" as Section 1782's "primary statutory goal").

Accordingly, "[a]s a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation." In re Porsche Automobil Holding SE, 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

To obtain discovery under Section 1782, a party to a foreign proceeding need only demonstrate that (1) the person from whom discovery is sought resides or is found in the

district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012).

Once the statutory requirements for Section 1782 relief are satisfied, the Court has discretion to grant the application based on certain equitable considerations, including (i) whether the discovery sought is within the jurisdiction of the foreign proceeding, (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions," and (iv) whether the request is otherwise "unduly intrusive or burdensome." See Intel, 542 U.S. at 264-65.

Here, the statutory requirements are met, and the discretionary factors weigh in favor of granting the Application.

## II.    Sumitomo's Application Satisfies the Statutory Requirements of Section 1782.

### A.    Respondent Is Located in the Southern District of New York.

Respondent has its headquarters and principal place of business within the Southern District of New York.

Clear Street's headquarters and principal place of business is 4 World Trade Center, 150 Greenwich Street, 45th Floor, New York, New York, 10007.  Clear Street lists this address on its most recent filing with the Securities and Exchange Commission.  Henslee Decl. Ex. 7 ("Clear Street, LLC Form X-17A-5" filed February 29, 2024).

### B.    The Requested Discovery Is For Use in Legal Proceedings Ongoing in the Bermuda Supreme Court.

To determine whether Section 1782's "for use" requirement is met, the Court need not consider the discoverability or admissibility of evidence in the foreign proceeding.

Brandi–Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 82 (2d Cir. 2012). The "for use" element is satisfied if the discovery sought "will be employed with some advantage or serve some use in the proceeding" and need not be "something without which the applicant could not prevail." Mees v. Buiter, 793 F.3d 291, 298 (2d Cir. 2015). Courts focus on "the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." In re Accent Delight Intl. Ltd., 869 F.3d 121, 131 (2d Cir. 2017).

Sumitomo will be able to employ the information sought in the Requested Discovery "with some advantage" in the Bermuda proceedings because it relates to whether Alpine has standing to seek an appraisal of shares in Myovant. Similarly, documents related to voting of Alpine's shares in Myovant are also directly relevant to whether Alpine was entitled to vote on the Transaction and how the shares it eventually purchased, or in which it held a beneficial interest, were voted. Wasty Decl. ¶ 26. These documents will therefore help the Bermuda Court assess whether Alpine has standing to seek appraisal of any of the 6,425,084 shares at issue, or if all or part of its claim should be dismissed, thereby resolving the Bermuda Proceeding entirely. Wasty Decl. ¶¶ 21, 26.

The Requested Discovery thus goes to the core of the Bermuda Proceeding, and Petitioner is seeking it "for use" in that proceeding.

### C. Petitioner is a Party to the Foreign Proceeding.

Petitioner is a party to the foreign proceeding. "[L]itigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." Intel, 542 U.S. at 256; Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Intl (USA) Ltd., 785 F.Supp. 2d 434, 438 (S.D.N.Y. 2011) (same).

## III. The Intel Discretionary Factors Strongly Favor Granting the Requested Discovery.

The discretionary factors outlined by the Supreme Court in Intel, weigh in favor

of granting the Application. In Intel, the Supreme Court held that courts should consider four discretionary factors when deciding whether to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceedings or is within the jurisdiction of the tribunal administering the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. assistance; (3) whether the request attempts to circumvent foreign evidence-gathering restrictions or other policies of the foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. See Intel, 542 U.S. at 264-65. Here, each factor supports discovery.

### A. Respondent Is Not a Participant in the Bermuda Proceedings, and the Bermuda Court Cannot Compel Discovery in the United States.

Where, as here, the entity from whom discovery is sought is not a party to the foreign proceeding, "the need for an order of discovery" from a U.S. court "is more apparent." See In re Dominique Levy, et al., 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (citing Intel, 542 U.S. at 264). Respondent is not a party to the foreign proceeding, and is thus outside the jurisdiction of the Bermuda Court, which cannot compel it to produce the Requested Discovery. Wasty Decl. ¶ 25.

Sumitomo has solicited the Requested Documents from Alpine in the Bermuda Proceedings, see Wasty Decl. ¶¶ 23–24, but Alpine declined to produce some documents responsive to Sumitomo's requests and represented that others are unavailable to it, see Wasty Decl. ¶¶ 22–24. Where a foreign party does not produce documents after being ordered to do so by a foreign court, U.S. courts find the documents are not available to the foreign tribunal and the first Intel factor favors granting the Section 1782 application. See, e.g., Eni Ghana Expl. & Prod. v. Gaffney Cline & Assocs., 2022 WL 3156224, at *4 (S.D. Tex. Aug. 8, 2022) (finding this factor favored granting 1782 discovery of documents also in possession of party to foreign action in part because the foreign party "did not produce the [documents] in the

foreign action"); Allied Aviation, LLC v. ASIG Holdings Corp., 2012 WL 13137013, at *2 (M.D. Fla. May 1, 2012) (finding first Intel factor favored production where "the [foreign tribunal] has ordered the [documents] that they seek to discover be produced, but [the foreign party] has not produced it"). Likewise, where a foreign party is unable to produce documents because they are unavailable to it, the first Intel factor again favors granting the Section 1782 application. See In re Kuwait Ports Auth., 2021 WL 5909999, at *9 (S.D.N.Y. Dec. 13, 2021) (granting Section 1782 discovery from Citibank for use in Cayman litigation where requested documents were "outside the [Cayman party's] possession"). The first Intel factor therefore weighs in favor of granting the Application.[3]

### B. The Bermuda Court Is Not Hostile to This Application.

In evaluating this factor, courts should find in favor of discovery absent a "clear directive"—meaning "authoritative proof"—from the foreign country's judicial, executive, or legislative declarations that specifically rejects the use of evidence gathered under foreign proceedings. Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995).

Here, not only is there no such clear evidence, but, to the contrary, there is every reason to believe the Bermuda Court would appreciate and benefit from this Court's assistance. Courts in this district commonly find that Bermudian courts are receptive to evidence obtained pursuant to Section 1782. In re Oasis Core Investments Fund Ltd., 2024 WL 472984, at *2 (S.D.N.Y. Feb. 7, 2024) (granting Applicant's § 1782 application in relation to a shareholder appraisal rights proceeding in the Supreme Court of Bermuda in part because "both [parties] agree that Bermuda courts are receptive to evidence obtained pursuant to Section 1782."); In re Application of Hill, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) (rejecting motion to quash

---

[3] Alpine has likewise filed section 1782 applications in this district seeking discovery from third parties J.P. Morgan, Goldman Sachs, and Pfizer for use in the Bermuda Proceedings. See In Re Alpine Partners (BVI) L.P., No. 23-mc-00173 (S.D.N.Y. May 23, 2023); In Re Alpine Partners (BVI) L.P., No. 24-mc-00011 (S.D.N.Y. January 8, 2024).

Section 1782 subpoena for discovery to be used in Bermudian and Hong Kong liquidation proceedings); see also In the Matter of the Application of Winston Wen-Young for Assistance Before a Foreign Tribunal, No. 21-cv-8627, ECF No. 19 (D.N.J. June 15, 2021) (granting Section 1782 application for discovery to be used in Bermudian proceedings). As such, this factor also favors granting the Application.

      **C.    The Application Has Not Been Filed to Circumvent Any Law or Rule.**

Sumitomo brings the Application in good faith and does not seek to circumvent an order of the Bermuda Court or Bermudian restrictions with respect to foreign proof gathering or other polices. Wasty Decl. ¶ 27. Bermudian law does not prohibit parties from seeking discovery pursuant to a Section 1782 Application. See Wasty Decl. ¶ 27; In re Oasis, 2024 WL 472984, at *2 (S.D.N.Y. Feb. 7, 2024). Moreover, under Bermudian law, to obtain disclosure of documents within the control of a non-party who is located outside the jurisdiction of a Bermudian court, it is *necessary* to seek the assistance of the courts in that jurisdiction. Wasty Decl. ¶ 25, 27.

The third Intel factor therefore also supports granting the requested discovery. In re Ex Parte Motorola Mobility. LLC., 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) ("Because there is no indication in the record of an attempt to subvert a foreign tribunal's restrictions, the court finds that this factor weighs in favor of [the applicant].")

      **D.    The Discovery Requests Are Not Unduly Intrusive or Burdensome.**

The requested discovery is modest. Sumitomo seeks a narrow set of documents related to Alpine's shares in Myovant that are directly relevant to whether Alpine has standing to seek appraisal of its shares in the Bermuda Proceedings and related corporate depositions. See supra Section II.B. The Requested Discovery is thus narrowly tailored and necessary for a fair resolution of the Bermuda Proceedings, and this factor also supports granting the Application.

## CONCLUSION

For the foregoing reasons, Sumitomo respectfully requests that the Court grant its Application pursuant to 28 U.S.C. § 1782 and enter the proposed order authorizing service of the proposed subpoena on Clear Street.

Dated: June 21, 2024

Respectfully submitted,
FRESHFIELDS BRUCKHAUS DERINGER
US LLP

By: */s/ David Y. Livshiz*

David Y. Livshiz
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
david.livshiz@freshfields.com
